IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MAURICE RICHARDSON                                                    PLAINTIFF

v.                                      Civil No. 2:23-2096-PKH-MEF

SGT. EDDIE SMITH, CAPT. WILLIAM
DUMAS, OFFICER HAMILTON, OFFICER
DUMAS, OFFICER DONOVAN, LT.
McINTOSH, ASHLEY SMITH, CAPTAIN
SMITH                                                                DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions

of 28 U.S.C. § 636(b)(1) and (3), the Honorable P.K. Holmes, III, Senior United States District

Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1]

Under § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress

from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

## I.  BACKGROUND

Plaintiff filed his Complaint on July 19, 2023.  (ECF No. 1).  That same day the Court

entered an Order directing him to submit a completed *in forma pauperis* ("IFP") application and

an Amended Complaint by August 9, 2023.  (ECF No. 3).  Plaintiff did so on August 7, 2023.

(ECF Nos. 5, 6).  On August 8, 2023, the Court entered Orders granting IFP status and directing

Plaintiff to submit a Second Amended Complaint to address deficiencies in his First Amended

---

[1] Enacted as part of the Prison Litigation Reform Act ("PLRA").

1

Complaint.  (ECF Nos. 7, 8).  Plaintiff filed his Second Amended Complaint on August 28, 2023.

(ECF No. 11).

      Plaintiff's current address is the Arkansas Division of Correction Varner Unit,[2] but his

Complaint centers on his incarceration in the Sebastian County Detention Center ("SCDC"). (ECF

No. 11).  For his first claim, Plaintiff names Officer Dumas,[3] Officer Hamilton, and Officer

Donovan as Defendants.  (ECF No. 11 at 4).  He lists the time-frame for this claim as between

October 22, 2022, through February of 2023.  (*Id*.).  Plaintiff characterizes this claim as "racial

discrimination – forced to in[g]est unknown medical substance – denial of medical attention –

excessive force – conditions of confinement – mental oppression – refusal of medical care."  (*Id*.).

Plaintiff states he witnessed Defendants Officer Dumas and Officer Hamilton abuse another

prisoner he describes as an old, mentally ill Black American.  As a result he states "they":

> retaliated against me by handcuffing me and shoving me into BC4 several times
> between 2am and 4am, forced me to ingest unknown substances in a clear tube –
> shined their flashlight in strobe mode multiple times – forced me to live in cell
> BC17 with Nazi graffiti then moved me after one month to BC24 which has no
> light during the day and extremely bright lights all night. Toilet wasn't working I
> lived with feces for day. Would not allow me to exercise outside of cell, etc.[4]

(*Id*.).  Plaintiff does not describe any action or inaction by Defendant Officer Donavan.  Instead

he states "each officer participated but mostly Dumas and Hamilton with racial remarks pointing

---

[2] Mail sent to Plaintiff at the ADC Ouachita River Unit was returned undeliverable on September
15, 2023.  (ECF No. 13).  It was resent to the Varner Unit. (*Id*.).

[3] Plaintiff names two Defendants with the last name of Dumas in this case: Officer Dumas and
Captain William Dumas.

[4] Plaintiff's allegations that he was exposed to feces for a day and was not allowed to exercise
outside of his cell are insufficient to state plausible constitutional claims and will not be addressed
further. *See Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (no constitutional violation
where pretrial detainee was subjected to overflowed toilet for four days); *Wishon v. Gammon*, 978
F.2d 446, 449 (8th Cir. 1992) (A "lack of exercise may be a constitutional violation if one's muscles
are allowed to atrophy or if an inmate's health is threatened.").

their pepper spray in my face yelling." (*Id*. at 5).  Plaintiff does not allege that he was actually pepper-sprayed.  Plaintiff alleges Defendant Officer Hamilton handcuffed him and shoved him into BC4, injuring his right shoulder.

Plaintiff alleges he suffered from a variety of physical complaints as a result of his treatment.  He lost his balance often and was constantly dizzy.  (*Id*.).  He alleges he fell multiple time because the strange substance he ingested.  He vomited and the vomit contained blood.  (*Id*.).  His hands would swell and he lost sleep.  (*Id*.).  He still experiences headaches and dizziness, both ankles[5] have white spots and often swell.  (*Id*.).  His shoulder still hurts.  He has trouble sleeping and experiences nightmares of "them" entering his cell at night.  (*Id*.).

Plaintiff proceeds against Defendants in their individual and official capacities for this claim.  (*Id*.).  As his official capacity claim, Plaintiff alleges "it is widespread practice for officers to verbally abuse inmates & quickly use pepper-spray on inmates.  Often they will spray eyes then quickly cuff an inmate then begin to beat him with fists and kicks." (*Id*.).  Plaintiff does not allege that he himself was pepper-sprayed, beaten, or kicked.

For his second claim, Plaintiff names Defendants Captain Dumas, Lieutenant McIntosh, and Captain Smith.  (*Id*. at 6).  He lists the time-frame for this claim as from October 22, 2022, to the time he filed his Amended Complaint.  (*Id*.).  Plaintiff characterizes this claim as "racial discrimination, mental abuse, excessive force, conditions of confinement – refusal to medical care." (*Id*.).  He alleges that each of the named Defendants are responsible for each officer in the detention center, and are "each accountable for their Deputies' actions." (*Id*.).  Plaintiff further alleges that Defendant Captain Dumas made an inspection of the jail and saw him in BC24 with

---

[5] The actual spelling listed on the Complaint appears to be "anchels," which the Court will interpret as ankles.

"no lights during the day and extreme lights at night.  I told him that I have been in the conditions for over a month.  He looked at me and smiled and kept walking."  (*Id.*).  Plaintiff alleges he "has trouble sleeping now with nightmares they are coming for me again."  (*Id.*).  Plaintiff does not allege that the lights at night prevented him from sleeping.

Plaintiff proceeds against Defendants in their individual and official capacities for his second claim.  (*Id.* at 7).  For the official capacity portion of this claim, he alleges it is "their policy that BC-Pod have proper light both day and night, that toilets are properly working and that inmates are in a safe "protective" pod.  (*Id.*)

For his third claim, Plaintiff names Defendant Ashley Smith.  (*Id.* at 7).  Plaintiff characterizes this claim as "denial of documents – attempting to cover-up her not allowing inmate to respond to mail."  (*Id.*).  Plaintiff alleges: "The Court sent a letter for Ashley Smith to deduct from my account.  Ms. Smith is the person who also assigns inmates to be sent to the prison.  Once she sees our name she quickly relocates inmates knowing we have a limited window to respond."  (*Id.*).  Plaintiff does not allege that he was relocated, that he was prevented from timely responding to any communication from the Court,[6] or that the usual fund deduction for an *in forma pauperis* inmate was not initiated at the facility.

Plaintiff seeks compensatory, punitive and other damages.  (*Id.* at 9).  Plaintiff asks that he be compensated $6.5 million dollars for pain, mental abuse, physical abuse, and for any medical treatment he may need for ingesting unknown substances.  (*Id.* at 9).  He also asks that Officers Sumas, Hamilton, and Donovan be dismissed, that all employees of the SCDC undergo racial

---

[6] The Court also notes that there is no need for an inmate to respond to either the Order granting *in forma pauperis* status or any communication sent to the facility to begin deducting the court filing fee pursuant to the PLRA.

4

sensitivity training, and that the Court require an "outside source" to monitor the condition and operation of the jail.  (*Id.*).

## II.  LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right.  *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'"  *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  *Jackson*, 747 F.3d at 544 (cleaned up).  However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  ANALYSIS

#### A.      Defendants Sgt. Eddie Smith and Officer Donovan

Plaintiff's personal capacity claims against Defendants Sgt. Eddie Smith and Officer Donovan are subject to dismissal.  Plaintiff lists Sgt. Eddie Smith in the caption of the Amended Complaint, but does not name him or otherwise describe any action or inaction on his part in the body of the Complaint.  Merely listing a defendant in a case caption is insufficient to support a claim against the defendant.  *Krych v. Hass*, 83 Fed. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (per curiam) (noting that court properly dismissed pro se complaint that was silent as to defendant except for his name appearing in caption)).

Plaintiff does name Officer Donovan as a Defendant for Claim One.  He does not, however, identify any action or inaction on his part for that claim.  "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)).  Thus, to state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights.  Plaintiff has not alleged a causal link between Defendant Officer Donovan and his allegations in Claim One.  *See Martin*, 780 F.2d at 1337.  (Even a pro se Plaintiff must allege specific facts sufficient to state a claim).

#### B.      Claim One

Plaintiff alleges that, along with Officer Hamilton, Officer Dumas pointed his pepper-spray at him and yelled "racial remarks."  Plaintiff does not allege that he was actually sprayed with the pepper-spray during the incident in question.  Neither the mere threat to use pepper-spray nor the utterance of "racial remarks" rise to the level of a constitutional violation.  "Verbal threats do not

constitute a constitutional violation." *Martin*, 780 F.2d at 1339.  Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation).

Plaintiff also alleges that it is a widespread practice in SCDC to "quickly" use pepper-spray on inmates, and then handcuff and kick or beat them.  Because Plaintiff does not allege he was actually pepper-sprayed, kicked, or beaten in this incident, he failed to state a plausible official capacity claim concerning the use of force on inmates.  *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (an official capacity claim requires that a Plaintiff rights were violated by a policy or custom of the government entity).  Nor can Plaintiff bring an official capacity claim on behalf of other inmates.  *See Martin*, 780 F.2d at 1337 ("A prisoner cannot bring claims on behalf of other prisoners.").

Plaintiff's allegations that Officer Hamilton and Officer Dumas retaliated against him for witnessing their alleged abuse of another prisoner, and his allegation that Office Hamilton shoved him and injured his right shoulder while he was handcuffed state personal capacity claims sufficient to survive screening.

### C.      Claim Two

Plaintiff's alleges that Defendants Captain Dumas, Lieutenant McIntosh, and Captain Smith are "each accountable for their Deputies' actions."  Plaintiff does not identify any specific unconstitutional actions by any specific Deputy for this claim.  *Respondeat superior* is not a basis for liability under 42 U.S.C. § 1983.  "Liability under section 1983 requires a causal link to, and

direct responsibility for, the deprivation of rights.  To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).  A claim of deprivation of a constitutional right cannot be based solely on a *respondeat superior* theory of liability.  *See Monell v. Department of Soc. Servs.*, 436 U.S. 654, 694 (1978).  Thus, Plaintiff fails to state any plausible personal capacity claims against Defendants Captain Dumas, Lieutenant McIntosh, and Captain Smith based on the unidentified actions of unknown deputies.

"[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone Cnty Jail*, 602 F.3d 920, 928 (8th Cir. 2010). However, a prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Plaintiff alleges he spoke with Defendant Captain Dumas during an inspection of BC24 and told him he had been subjected to " no lights during the day and extreme lights at night" for over a month.  He alleges that Captain Dumas' reaction was to smile and keep walking.  Plaintiff does not allege that he was prevented from sleeping by the nighttime lighting; instead he alleges that his sleep suffered due to his nightmares. *See Martin*, 780 F.2d at 1337.  (Even a pro se Plaintiff must allege specific facts sufficient to state a claim); *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (Claims under the Eighth Amendment require an actual non-*de minimis* injury.)

Finally, as his official capacity portion of this claim, Plaintiff alleges that SCDC violated its internal policies concerning the lights and toilets in the "protective" pod.  It is well settled that

prisoners do not have a constitutional right to enforce compliance with internal prison rules or regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having ... prison officials follow prison regulations"); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy").

### D.     Claim Three

Plaintiff failed to state a plausible denial of meaningful access to courts claim in Claim Three.  Plaintiff alleges that Defendant Ashley Smith prevents inmates from responding to mail by "quickly" relocating them, "knowing we have a limited window to respond.  The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977).  Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance."  *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation.  *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

An inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate

must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Plaintiff does not allege that he was prevented from responding to any mail or that he suffered any prejudice or actual injury concerning this or any other case. He was able to file this lawsuit and has been able to communicate timely with the Court. Nor does Plaintiff allege that he was relocated because he filed this lawsuit. As such, he has failed to state a plausible denial of meaningful access to courts claim.

## IV. CONCLUSION

Accordingly, it is recommended that the following claims remain for further review:

1. Plaintiff's personal capacity claim that Defendants Officer Hamilton and Officer Dumas retaliated against him for witnessing their alleged abuse of another prisoner; and

2. Plaintiff's personal capacity claim that Officer Hamilton utilized excessive force against him when he shoved him and injured his right shoulder while he was handcuffed.

All other claims against all other named Defendants should be DISMISSED WITHOUT PREJUDICE, and those Defendants TERMINATED as parties in this case.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this **2nd day of October 2023**.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE